Anderson J.
delivered the opinion of the court.
Horace Morrison and Thomas J. Morrison on the 28th day of September 1869 executed and acknowledged a deed before John Miller, a justice of the peace, to annul and set aside which, for fraud, the bill in this case was filed by the former. The answer positively denies any and every intimation and allegation of fraud. The decree of the Circuit court, in which the cause was pending, set aside and annulled the deed as fraudulent and void; from which decree the defendant appealed to this court.
I do not think that the charge of fraud is supported by the proofs. It is true that the plaintiff was both deaf and dumb, and was born so. But it appears from the testimony of both the plaintiff’s, and the defendants’ witnesses, that he was capable of making known his thoughts and wishes by signs to those who were well acquainted with him, and of understanding their communications to himself with a most remarkable certainty. He was not educated, but the weight of testimony shows that he was a man of intelligence, and was remarkably cautious in his business transactions, and understood well his own interests. It is proved that an application was made at one time to the court of his county to appoint an agent to attend to his business, but the court refused, upon the ground that he was fully competent to attend to his matters *196 himself. The plaintiff’s witness, Silas Minter, says. “ if he was not drinking, I don’t think he would be-apt to sign any paper without understanding fully the purport and meaning of the paper;” and it is not pretended that he was drinking at the time'this deed was-prepared or executed. It was written more than two-years before he executed it, and remained in his possession, affording him opportunity of having it explained to him by his acquaintances, of which it is probable he availed himself. He sent for men to witness it, who undoubtedly explained it to him. Mr. Miller, the justice before whom it was acknowledged, testifies that Skelton Coleman and G. J. Gray were witnesses to the deed, though their names do not appear to be subscribed to the copy in the record. And he says that both of them in his presence explained it to him before he executed it, and acknowledged it before him. He certified his acknowledgment, and swears that he would not have certified it if he had not believed that he fully understood the nature of it. This witness was introduced by the plaintiff, and certainly had no leaning to the defendant. Mr. Coleman says he was present when the deed was made, and had no doubt that his mind was as good as it ever was, and that “ he perfectly understood what he was doing.”
There is evidence too that before he made the deed he had determined to give all his property to this nephew, and not to have it divided amongst his kin. One of the witnesses, William Watson, testifies that sometime before he made this deed, he told him that he intended to give all his property to Thomas J. Morrison, and proposed to him to go with him to Henry court-house, to get Mr. George D. Gravely to write the deed, which he declined to do, as it did not concern him. Andew Morrison testifies, that he sent him after *197 the men to witness the deed, and told him a number of times that he intended to make the deed. At least -eight or nine witnesses testified to the deed, and that they knew that it was his intention to give all his property to Thomas J. Morrison, his nephew. Indeed he does not himself deny that such was his purpose, or that he signed the deed in question. But he is made to say in his bill that he signed it under the misrepresentation of his said nephew, that it was not to take effect until after his death. How can we know that he alleged the facts or statements of the bill, or the foregoing charge against his nephew? If he could make himself understood as to those matters, he could have made known his wishes as to the disposal or conveyance of his property. And if he could understand the allegations made in the bill, so as to give them his sanction and to make it his bill, why could he not understand the explanations made to him by Coleman •and Gray, and others, as to the purport and meaning -of the deed, which he kept for two years, and then executed ? or if he could be made to understand its ■contents after it was executed, why not before? The •deposition of Coleman was taken, and he testifies that he fully understood what he was doing. The grantor approved of it upon his explanation and Gray’s, and Thomas Morrison, and willingly signed it and acknowledged it before the magistrate, who being satisfied that he understood it, certified his acknowledgment. But his bill charges, that Thomas J. Morrison misrepresented to him the purport and meaning of the deed. There is no proof in the record to support the allegation. The contrary is established by the evidence, as far as a negative can be proved. It is proved that Coleman and Gray both explained the deed to him, and the presumption is that they explained it to him *198 truthfully, and it is the fair inference, that Thomas Morrison explained it to him in the same way they did.
• Indeed the charge of misrepresenting the purport and meaning of the deed to him by Thomas Morrison cannot be maintained without convicting Coleman and Gray, who appear to be disinterested and unimpeached witnesses, of a false representation of its purport and meaning. I think the testimony proves that he was satisfied with the deed as it was represented to him by Coleman and Gray, and willingly signed it; and it negatives the charge of a false and fraudulent representation to him by his nephew. There is no testimony in the cause of either party in conflict -with this view of the case, but much that has not been commented on to support it.
It seems that Thomas Morrison was not living with his uncle when the deed was executed, but two , or three months after went to live with him, agreeably to his promise, and he and his wife remained with him some six or eight months. The unfortunate old man’s habits had become very bad, and he was frequently drunk, or under the influence of liquor, and treated his nephew’s wife badly, so that her husband could not, with any propriety, require her to remain there,, and they moved away, as they were required to do by the plaintiff, and with his consent. But the proof is, that whilst they remained on the premises their treatment of the old man was uniformly kind and respectful, and that they clothed him and fed him well. And after they moved from the place he was visited by his nephew, and his wants inquired into and supplied by him, as far as he would allow him.
It is not pretended by Horace Morrison, or by those who may have been anxious to defeat the transfer of his little property to his nephew, that they might get *199 it themselves, that it was not his intention to give the whole of his property to the appellant. That seems to be conceded on all hands, and he objects to the deed only upon the ground that as represented to him, it in effect takes the property from him during his life and transfers it to his nephew. It is not clear that it may not be differently construed. It does not seem to contemplate any removal of property, or transfer of possession during the life of the grantor. It is true the deed passes the title to the grantee inprcssenti; but it can only be enjoyed by the grantee during the life of the grantor by his living with him. The grantor’s right to his home is recognized by the clause which requires the grantee to live with him during his life. Under the provisions of this deed I do not think it would have been in the power of the grantee to have ousted the grantor of his possession during his life. And I think he could only have enjoyed the use of the personal property during his life, whilst he lived with him. It seems to me that is implied in the grantee’s covenants. And to make it more effectual the deed is signed and sealed and acknowledged by him as well as by the grantor. Whether the deed will bear this construction in law or not, it might have been so understood by the parties, and such, as I understand the record, has been its practical working. When the grantee was forced to leave, by the conduct of the grantor in the maltreatment of his wife, he did not seek to disturb the grantor in his possession whilst he lived.
If the foregoing construction was given to the deed, as we have seen might have been fairly given to it, it is not really different in effect from what the plaintiff* below alleged he understood it to be. And according to his understanding of the deed he enjoyed his pro *200 perty in the main during his life; and there is nothing shown by this record to warrant a court of justice to divest the appellant of the title to the property after the death of the grantor, which, by his deed in his lifetime, which he deliberately, understandingly and willingly executed, he vested in the appellant.
I am of opinion therefore to reverse the decrees of the Circuit court, and to dismiss the plaintiff’s bill with costs.
Decree reversed.